UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAKEN ZHANUZAKOV, Petitioner, v. WARDEN, DESERT VIEW ANNEX et al, Respondents. | Case No. 5:26-cv-04199-MAR<br><br>ORDER GRANTING PETITION FOR HABEAS CORPUS AND ORDERING IMMEDIATE RELEASE |

## I.
## INTRODUCTION

On July 27, 2026, Shaken Zhanuzakov ("Petitioner"), proceeding through counsel, filed a Petition for Writ of Habeas Corpus ("Petition") by a Person in Federal Custody pursuant to 28 U.S.C. § 2241. ECF Docket Nos. ("Dkt.") 1 ("Pet"). Petitioner argues his re-detention in Immigration and Customs Enforcement ("ICE") custody violates his Fifth Amendment due process rights and the Immigration and Nationality Act ("INA") and seeks release. Id. at 18–25.[1] Respondents filed an Answer indicating they are not presenting an opposition argument. Dkt. 10. For the reasons set forth below, the Petition is **GRANTED**.

[1] All citations to electronically filed documents refer to the CM/ECF pagination.

## II.

## BACKGROUND[2]

Petitioner is a citizen of the Kyrgyz Republic. Pet. at 2. Petitioner was ordered removed in absentia in September 2017. Id. at 12. Petitioner entered the United States on April 13 or 14, 2022. Id. On April 20, 2022, Petitioner was issued a Notice of Intent/Decision to Reinstate Prior Order, Form I-871, and a Warrant of Removal/Deportation. Id. Petitioner expressed his intent to file for asylum. Id. Petitioner was served a notice titled Information About Reasonable Fear Interview, Form M-488, which advises that a person who has expressed a fear of persecution, torture, or return "will be interviewed by a specially trained asylum officer" to determine whether he has a reasonable fear of persecution or torture. Id. at 13. Petitioner signed the form's Alien Acknowledgment of Receipt that day, on a signature line describing the signer as the person "being referred to asylum officer." Id. (citing Ex. E-1). In the more than four years since, no reasonable fear interview has been conducted, and no reasonable fear determination has been made. Id.

On April 21, 2022, the same day Petitioner acknowledged the reinstatement notice and the reasonable fear notice, Respondents released him from custody. Id. They issued him an Order of Supervision ("OSUP") and permitted him to live at liberty in the United States. Id. (citing Ex. F). As a condition of that release, Respondents enrolled Petitioner in an Alternatives to Detention program. The OSUP required Petitioner to appear when directed, to report changes of address, to assist in obtaining travel documents, to refrain from committing crimes, and to comply with the conditions of the Alternatives to Detention program. Id. (citing Ex. F). Petitioner complied with those conditions for approximately four years. Id. at 14. He

---

[2] The following facts are taken from the Petition, which is verified by Petitioner's counsel, Dkt. 1 at 27, and the attached exhibits. Respondents had the opportunity to dispute these facts or provide contrary facts, but declined to do so. Dkt. 10. Indeed, Respondents' only response in their Answer is that "Respondents are not presenting an opposition argument at this time." Id. at 2. Accordingly, the facts presented by Petitioner are undisputed and conceded. See C.D. Cal. L.R. 7-12.

reported as directed, did not move without notifying the agency, and committed no crimes. Id. In June 2024, Petitioner, through counsel, applied for employment authorization. At no point during those four years did Respondents notify Petitioner that he had violated any condition of his release or take any step suggesting that supervision was no longer adequate. Id.

On July 23, 2026, Petitioner voluntarily appeared at a scheduled check-in with U.S. Immigration and Customs Enforcement. Id. at 16. Respondents arrested Petitioner at that check-in and transported him to the Desert View Annex in Adelanto, California, where he remains confined. Id. Respondents gave Petitioner no advance notice that his release was being revoked. Respondents have not provided Petitioner or his counsel with a written statement of the reasons for revoking his release, notwithstanding counsel's same day written requests. Id. at 17 (citing Ex. J). Respondents have not afforded Petitioner an informal interview or told him when or whether such an interview will occur. Respondents have not identified any condition of the OSUP that Petitioner violated and have not disclosed any determination by an authorized official, under any provision, revoking his release or explaining the basis for doing so. Id. No neutral decisionmaker has determined that Petitioner is a danger to the community or a flight risk, or has reviewed whether his continued detention is necessary. Id. Respondents have not informed Petitioner that a travel document has been requested from or issued by the Government of the Kyrgyz Republic, or that any removal has been scheduled. Id.

Petitioner has a wife and three children, two of whom are citizens of the United States and the younger of whom was born approximately ten weeks before Petitioner's arrest. Id. Petitioner's wife has a pending asylum claim. Id. at 2.

///

///

///

///

## III.

## DISCUSSION

### A. APPLICABLE LAW

#### 1. INA

Detention, release, and removal of individuals ordered removed is governed by 8 U.S.C. § 1231(a). Johnson v. Arteaga-Martinez, 596 U.S. 573, 578 (2022). A noncitizen shall be removed within 90 days of the removal order, subject to a potential 90-day extension. 8 U.S.C. § 1231(a)(1). However, once that period passes, and the noncitizen is not removed, they "shall be subject to supervision under regulations prescribed by the Attorney General." Id. § 1231(a)(3). The noncitizen may be detained beyond the removal period under certain conditions, but "if released, shall be subject to the terms of supervision in paragraph (3)." Id. § 1231(a)(6).

Sections 241.4 and 241.13 of Title 8 of the Code of Federal Regulations govern the release of noncitizens pursuant to 8 U.S.C. § 1231(a)—and the revocation of that release. Both sections allow release to be revoked when a noncitizen violates the conditions of their release. 8 C.F.R. §§ 241.4(l)(1), 241.13(i)(1).[3] Section 241.13(i) allows DHS to revoke a noncitizen's OSUP and re-detain them "if, on account of changed circumstances, the [government] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." Both sections establish certain required process for the revocation of release. Upon such revocation, the noncitizen (1) "will be notified of the reasons for revocation of his or her release" and (2) will be given "an initial informal interview promptly after his or her return to [] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." Id. §§ 241.4(l)(1),

---

[3] Section 241.4(l) also allows revocation "in the exercise of discretion when, in the opinion of the revoking official" certain other conditions are met, and section 241.13(i) also permits revocation "if, on account of changed circumstances, the [government] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." Id. §§ 241.4(l)(2), 241.13(i)(2).

241.13(i)(3). If the noncitizen continues to be detained after the informal interview, they shall be scheduled for the "normal review process," which begins with notification of a records review and scheduling of an interview, "which will ordinarily be expected to occur within approximately three months after release is revoked." Id. §§ 241.4(l)(3); 241.13(i)(2) ("[I]f the [noncitizen] is not released from custody following the informal interview . . . the provisions of § 241.4 shall govern the [noncitizen]'s continued detention pending removal."). "In simpler terms, in order to revoke release, the government must notify the noncitizen of the reason for the revocation and give them both an informal and formal interview." Delkash v. Noem, No. 5:25-cv-01675-HDV-AGR, 2025 WL 2683988, at *4 (C.D. Cal. Aug. 28, 2025).

**2. Due process**

The Fifth Amendment guarantees that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." Demore v. Kim, 538 U.S. 510, 523 (2003) (citing Reno v. Flores, 507 U.S. 292, 306 (1993)). The Due Process Clause generally "requires some kind of a hearing before the State deprives a person of liberty or property." Zinermon v. Burch, 494 U.S. 113, 127 (1990).

In several recent decisions, courts in this District have found that immigration authorities violated or likely violated due process by re-detaining noncitizens who had been released shortly after their entry to the United States without notice or an opportunity to be heard. See Cruz v. Lyons, et al., No. 5:25-cv-02879-MCS-MBK (C.D. Cal. Nov. 6, 2025) at Dkt. 12 (granting TRO ordering release of noncitizen who had been paroled into the United States and was re-arrested at appointment with United States Citizenship and Immigration Services); Yataco v. Warden, Adelanto Det. Facility, No. 5:25-cv-03229-JAK-MBK, 2025 WL 4065463, at *1 (C.D. Cal. Dec. 26, 2025), adopted, 2026 WL 158151 (C.D. Cal. Jan. 16, 2026) (granting petition for noncitizen who had been paroled in the United States and was re-arrested at ICE

check-in). See also M.V.F. v. Santacruz, No. 2:25-cv-11700-MEMF-E, 2025 WL 3691419, at *5 (C.D. Cal. Dec. 19, 2025) (granting TRO ordering release of noncitizen had been released on their own recognizance shortly after entering the United States and was re-arrested at ICE check-in).

As in these cases, the Court considers Petitioner's procedural due process claim under the familiar Mathews v. Eldridge framework, which considers: (1) the private interest at stake; (2) the risk of erroneous deprivation; and (3) the Government's interest. Mathews, 423 U.S. at 335.

**B. ANALYSIS**

The Court finds that Petitioner has demonstrated that the government did not comply with the process laid out in sections 241.4(l)(1) and 241.13(i)(3). First, Petitioner was never notified of the reasons for revocation of his release. Pet. at 17. "Petitioner must be told what circumstances had changed . . . in order to meaningfully respond to the reasons and submit evidence in opposition," as allowed under sections 241.4(l)(i) and 241.13(i)(3). See Hashemi, 809 F. Supp. 3d at 1035 (citing Sarail A. v. Bondi, 803 F. Supp. 3d 775, 2025 WL 2533673, at *10 (D. Minn. 2025); Esmail v. Noem, No. 2:25-CV-08325-WLH-RAO, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025)). Notice must provide real, specific, concrete information that a noncitizen could actually respond to. See id. Here, there is no contention that Petitioner was ever notified of the reasons for his detention. See Answer.

Second, there is no evidence that Petitioner was afforded a meaningful informal or formal interview as required by 8 C.F.R. 241.13(i)(3). Pet. at 17; see Hashemi, 809 F. Supp. 3d at 1035 (citing Sarail A., 2025 WL 2533673, at *10; Esmail, 2025 WL 3030590, at *6); 8 C.F.R. § 241.13(i)(3) ("afford[ing] [noncitizens] an opportunity to respond to the reasons for revocation," including an opportunity to "submit any evidence or information that he . . . believes shows . . . that he . . . has not violated the order of supervision")). Petitioner's arrest and re-detention were in violation of the procedures required under 241.4(l)(1) and 241.13(i)(3) and, thus, invalid.

The government's failure to provide Petitioner a meaningful notice of revocation and informal interview is in clear violation of the requirements of sections 241.4(l)(1) and 241.13(i)(3). A growing number of courts—including this one—have unequivocally found that the government's failure to follow its release revocation procedures renders the re-detention unlawful and requires release. See Delkash, 2025 WL 2683988, at *5–6 (collecting cases). "These procedures are not optional or discretionary; they must be followed, and failure to do so renders the detention unlawful." Id. at *6. "Rules matter. Hearings matter." Id. at *1.

Furthermore, it is undisputed that Petitioner has been living in the United States since 2022. Pet. at 12. It is also undisputed that Petitioner was released on an OSUP four years ago, and through that time, has not violated any term of the OSUP. Id. at 13. Thus, the Court concludes that once Petitioner was released from custody under the OSUP, he acquired "a protected liberty interest in remaining out of custody." Pinchi v. Noem, 792 F.Supp.3d 1025, 1032 (N.D. Cal. July 24, 2025) (collecting cases); Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1030 (N.D. Cal. 2025) ("The Supreme Court has recognized this protected liberty interest even though the released individual is subject to extensive conditions of release, like reporting regularly to a parole officer, not using alcohol, and not traveling out of the country."). Indeed, "the government's decision to release an individual from custody creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release." Pinchi, 792 F.Supp.3d at 1032 (internal quotation marks, brackets, and ellipses omitted). This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

Petitioner's liberty interest is particularly strong here because of the length of time he has been in the United States. See, e.g., Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) ("The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during

that time create a powerful interest for Petitioner in his continued liberty."). Indeed, Petitioner has lived as a law-abiding individual for approximately four years and is the father of U.S. citizen children. Pet. at 2. Petitioner's undisputed ties to the community further strengthen his liberty interest in remaining out of custody. See, e.g., Garcia v. Andrews, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty.").

It is also undisputed that Petitioner was detained without pre-deprivation notice or hearing. Pet. at 2. Thus, the Court concludes that Petitioner's detention without pre-deprivation notice or hearing violated his procedural due process rights. See, e.g., Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026); Fernandez Lopez v. Wofford, 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained."); Maldonado Vazquez v. Feeley, 805 F. Supp. 3d 1112, 1148 (D. Nev. 2025) ("Where, as here, a noncitizen is detained after having been ordered released, without any process provided by the Government for challenging his continued detention, detention becomes arbitrary and violates due process.").

Given this violation of Petitioner's due process rights, the Court further concludes that "Petitioner's release is necessary to return [him] to the status quo." Nazarian v. Noem, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025). The status quo is "the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted). The last uncontested status here is Petitioner's release from custody on OSUP. See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP

before his current re-detention."). "Accordingly, Petitioner's release from custody is the appropriate remedy." Id.; see Esmail v. Noem, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview ex post facto, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

Moreover, the Court concludes due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained. See, e.g., Ixchop Perez v. McAleenan, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), appeal dismissed sub nom. Perez v. McAleenan, 2020 WL 8970669 (9th Cir. Dec. 4, 2020) ("Accordingly, this court will join the consensus view among District Courts concluding that . . . where . . . the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." (internal quotation marks omitted)). Specifically, the Court concludes that Respondents must show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community. See, e.g., Mourey, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty. Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)); Carballo v. Andrews, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community.").

The Court further concludes that Petitioner is entitled to notice and an opportunity to respond that comports with 8 C.F.R. § 241.13(i) should Respondents attempt to re-detain Petitioner in the future. See, e.g., Valdez-Batista v. Immigr. & Customs Enf't Field Off. Dir., 2026 WL 449531, at *4 (W.D. Wash. Jan. 30, 2026) ("[I]n the event they seek to re-detain Petitioner in the future, Respondents must provide notice and an opportunity to respond that comports with 8 C.F.R. § 241.13(i)."). Indeed, the re-detention of a noncitizen subject to a final order of removal is governed by 8 C.F.R. § 241.13. The regulation was "intended to provide due process protections to noncitizens following the removal period as they are considered for continued detention, release, and then possible revocation of release." Constantinovici v. Bondi, 806 F. Supp. 3d 1155, 1163 (S.D. Cal. 2025) (internal quotation marks, brackets, and ellipses omitted). The regulation states, in part, that "[t]he Service may revoke [a noncitizen's] release under this section and return the [noncitizen] to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13. The regulation also provides that, "[u]pon revocation [of an OSUP], the [noncitizen] will be notified of the reasons for revocation of his or her release," and that there will be "an initial informal interview promptly after his or her return to Service custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3).

Finally, the Court notes that Petitioner also requested an award of reasonable attorneys' fees and costs. Pet. at 25. The Court will consider an application under the Equal Access to Justice Act ("EAJA") that is filed within 30 days of entry of final judgment in this action. See Rahimi v. Semaia, 2026 WL 246066, at *3 (C.D. Cal. Jan. 27, 2026) ("The Court will consider an application requesting costs and reasonable attorney's fees under the EAJA that is filed within 30 days of final judgment in this action.").

**IV.**

**ORDER**

**IT IS THEREFORE ORDERED**:

(1) the Petition is **GRANTED**;

(2) Respondents are **ORDERED** to immediately release **Petitioner Shaken Zhanuzako (A# 202-025-468)** from custody subject only to the conditions of his prior Order of Supervision and return all property taken from Petitioner during his arrest and processing into detention;

(3) Respondents are **ORDERED** to file a Notice of Compliance within forty-eight hours of this Order;

(4) Respondents are **ORDERED** not to re-detain Petitioner without first following all procedures set forth in 8 C.F.R. §§ 241.4, 241.13, and any other applicable statutory and regulatory procedures, and the Due Process Clause of the Fifth Amendment.

(5) Respondents are **ORDERED** not to re-detain Petitioner without first providing Petitioner notice and a pre-deprivation hearing before a neutral adjudicator where the government must bear the burden of proof by clear and convincing evidence that Petitioner's re-detention is justified based on changed circumstances and that Petitioner is a flight risk or a danger to the community such that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community.

Dated: August 13, 2026



HONORABLE MARGO A. ROCCONI
United States Magistrate Judge